■ CHRYSLER CREDIT CORPORATION, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. [691 NYS2d 656] —Mikoll, J. P. Cross appeals from a judgment of the Court of Claims (King, J.), entered April 7, 1998, upon a decision of the court in favor of claimant.

In April 1990, claimant extended financing to Christopher Wheeler in connection with his purchase of a new 1990 Eagle Talon vehicle from a dealer in Indiana. Wheeler acknowledged in his loan agreement that he was giving claimant a security interest in the vehicle. From the outset, claimant was aware that Wheeler intended to bring the vehicle to New York and would register and title it here. As proof of ownership, he was given a manufacturer's certificate of origin (hereinafter MCO) which noted claimant's security interest but did not specify the amount or date of the loan.

On April 21, 1990, Wheeler submitted a registration/title application to the Department of Motor Vehicles (hereinafter DMV), tendering the MCO as evidence of ownership. The registration was issued the same day. Subsequently, DMV issued a certificate of title to Wheeler dated May 20, 1990 which did not reflect the existence of any liens. On or about January 31, 1991, Wheeler sold the vehicle to a dealer.* Wheeler continued to make payments on his loan with plaintiff until August 1991, when he defaulted. After unsuccessfully attempting to repossess the vehicle, claimant discovered the foregoing events.

Unable to collect from Wheeler, claimant filed a claim against the State alleging negligence in DMV's issuance of a "clean"

---

* The dealer resold the vehicle the same day and it was subsequently resold again.

certificate of title, i.e., one showing no lien on the vehicle. In its answer, the State invoked the defense of immunity, alleging that its actions in issuing the certificate of title were discretionary. A trial ensued, following which the Court of Claims held that the function of the DMV clerk processing Wheeler's registration/title application was a ministerial one not insulated by the doctrine of sovereign immunity, that the clerk was negligent in processing the application for a certificate of title in the face of an indication that a security interest may be extant, but that claimant was partially responsible for its loss by failing to timely perfect its lien. After a damages inquest, the court determined that the fair market value of the vehicle was $10,800 and awarded claimant damages in the amount of 40% thereof, or $4,320. The State appeals from the entire judgment and claimant cross-appeals from that portion of the judgment limiting its award to 40% of the value of the vehicle.

We reverse. It is undisputed that claimant made no attempt to comply with the procedure required to perfect its lien in accordance with New York law (see, Vehicle and Traffic Law § 2118; 15 NYCRR 20.15), namely, the filing of either a MV-900 or MV-900.1 form and payment of a $5 filing fee. It is likewise uncontroverted that, as a matter of policy, DMV does not recognize lien information contained on a MCO, which is used solely to establish proof of ownership. Such lienholders, however, do not go unprotected. Whereas vehicle registrations are issued immediately upon a completed application therefor, certificates of title are not issued until a minimum of 10 days have elapsed so as to afford the lienholder an opportunity to perfect its lien (see, Vehicle and Traffic Law § 2118 [b] [1] [B]; [2] [B]). Wheeler's application was processed in accordance with these procedures. The certificate of title was not issued until May 20, 1991, almost one month after his application, during which period claimant could have perfected its lien and ensured that it would be reflected on the certificate of title.

Notwithstanding the foregoing, claimant argues that by virtue of the lien information contained on the MCO submitted by Wheeler, DMV was obligated to withhold issuance of the certificate of title, citing Vehicle and Traffic Law § 2105 (d) and § 2110, which requires the Commissioner of Motor Vehicles to withhold issuance of a certificate of title where he or she is not satisfied, inter alia, that there are no undisclosed security interests. We are not persuaded. As noted by the Court of Claims, in processing registration and title applications DMV clerks perform only the decidedly ministerial function of determining whether all of the necessary documents are

tendered, and they do not review MCO forms for lienholder information in view of the discrete procedures for perfecting liens. We disagree with the Court of Claims' conclusion that the lien notation contained on the back of the MCO tendered by Wheeler should have caused the DMV clerk to question Wheeler's application in that it did not reflect any lien information. Pursuant to DMV's procedures and the applicable statute and regulations, any lien on the vehicle could only be perfected by the lienholder, and there was consequently no duty on the part of the DMV clerk to inquire. Had claimant taken the necessary steps to perfect its lien, the clean certificate of title would not have been issued; having failed to do so, claimant is responsible for its own loss.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, without costs, and claim dismissed.

